Mr. Vernon M. Arrell Commissioner Texas Rehabilitation Commission 118 E. Riverside Drive Austin, Texas 78704
Re: Application of section 111.025 of the Human Resources Code, regarding certain limitations on the purchase of services by the Texas Rehabilitation Commission (RQ-1299)
Dear Mr. Arrell:
On behalf of the Texas Rehabilitation Commission, you ask four questions concerning the authority of the commissioner to make certain factual determinations and take action pursuant to section 111.025 of the Human Resources Code. Section 111.025 provides the following in pertinent part:
 (a) An officer, employee, or paid consultant of an organization that receives funds from the commission in payment for the provision of rehabilitation services may not be a member or employee of the board, nor may a person who cohabits with or is the spouse of an officer, managerial employee, or paid consultant of such an association be a member of the board or an employee of the board grade 17 or over, including exempt employees, according to the position classification schedule under the General Appropriations Act.
You inform us of the commission's view that section 111.025 does not apply to organizations that do not fit the definition of "rehabilitation facility" provided in section 7(10) of the federal Rehabilitation Act of 1973, 29 U.S.C. § 706(13), or to organizations that do not provide rehabilitation services as their primary task. You contend that the legislative intent behind section 111.025 was to place the commission at arm's length with those organizations with which it conducts business. You conclude that the section should apply only to rehabilitation facilities "created or continued" by the commission.[1]
In support of your argument, you describe two situations in which a literal application of section 111.025 will yield, in your opinion, adverse and unintended results. The first involves state colleges and universities:
 [T]he Commission purchases educational services from . . . State colleges [and universities]. The application of Section 111.025 to State universities and colleges from whom the Commission purchases educational, rather than rehabilitation, services is an example of an unintended result which would come from such an interpretation. . . . The Commission had no hand in establishing or continuing State universities and colleges, except by the very small payments of fees and tuition for disabled students, and such institutions do not have a primary purpose of rehabilitating the disabled. Therefore, Section 111.025 clearly should not be applied to such institutions.
The second situation involves a contract between the commission and the Guadalupe Economic Services Corporation (hereinafter the corporation). You advise us that the corporation is not organized primarily for the rehabilitation of the disabled. Under the contract, the corporation agrees to provide certain services designed to identify and assist disabled migrant and seasonal farmworkers in El Paso County and other handicapped persons who need assistance in obtaining competitive employment. The corporation also agrees to conduct an assessment of the feasibility of providing similar services in neighboring counties. The corporation derives less than five percent of its total revenues from the commission under this contract. The deputy director of the corporation is the spouse of a managerial employee of the Texas Rehabilitation Commission who serves in a salary grade above grade 17. You argue that because the corporation is not a "rehabilitation facility," section 111.025 should not apply.
On the basis of these facts, you request our opinion on the following issues:
 1. Whether the Commissioner of the Texas Rehabilitation Commission may find as a matter of fact that certain organizations, such as State universities and colleges, and the [Guadalupe Economic Services Corporation] are not organizations from which the Commission purchases rehabilitation services and that Section 111.025 [of the Human Resources Code] therefore does not apply.
 2. Whether the Commissioner of the Texas Rehabilitation Commission may find as a matter of fact that rehabilitation facilities created or continued by the Commission are organizations governed by Section 111.025. . . .
 3. Whether the Commissioner of the Texas Rehabilitation Commission, upon finding a violation of Section 111.025, may take action since Section 111.025 has neither a self-executing feature nor any penalty attached.
 4. Assuming the Commissioner of the Texas Rehabilitation Commission may take action, what is an appropriate remedy for a violation of Section 111.025?
Insofar as these issues are predicated upon the board's interpretation of section 111.025, we should first consider whether that interpretation is correct. We will begin with a review of the history of section 111.025.
Section 111.025 was enacted in 1985 as part of the "sunset" review of the Texas Rehabilitation Commission. Acts 1985, 69th Leg., ch. 603, at 2271. It was amended in 1987 to conform to the enactment of the Government Code. Acts 1987, 70th Leg., ch. 167, § 2.19(19), at 1347. Section 111.025 is substantially the same in language and form as thirteen other enactments of the 69th Legislature. See Agric. Code § 201.0141 (State Soil and Water Conservation Board); Educ. Code § 66.62 (Board for Lease of University Lands); Hum.Res. Code §§ 81.002 (Texas Commission for the Deaf), 91.011 (Texas Commission for the Blind), 101.0031 (Texas Board on Aging); Nat.Res. Code §§ 32.0123 (School Land Board), 34.0133 (Boards for Lease of State-owned Lands), 161.023 (Veterans' Land Board); Parks Wild. Code § 11.0122 (Parks Wildlife Commission); Water Code §§ 5.059 (Texas Water Commission), 6.057 (Texas Water Development Board); V.T.C.S. arts. 4477-5, § 2.023 (Texas Air Control Board), 5561c-2, § 108 (Texas Commission on Drug and Alcohol Abuse). These provisions are directed at averting potential conflicts of interest among members and employees of the boards or commissions created by each of the enumerated statutes. There are, however, other provisions that serve similar purposes. See, e.g., Hum.Res. Code § 111.013 (qualifications for appointment to board of Rehabilitation Commission); V.T.C.S. art. 6252-9b, § 1 (forbidding state officers and employees from holding any interest, financial or otherwise, that is in substantial conflict with discharge of their duties).
Though virtually identical to the other 1985 enactments in form and language, section 111.025 is broader in scope than most of the provisions cited above. Compare, e.g., Agric. Code §201.0141(b), (c) (prohibiting from board membership or employment officers, employees, etc., of "a statewide association whose primary purpose is soil and water conservation"); Hum.Res. Code §§ 81.002(d) ("an association representing the interests of deaf or hearing-impaired persons), 91.011(b) ("an association that has as its primary interest the provision of services to, or other matters relating to, the blind"). In contrast to those provisions, section 111.025 reaches all persons associated with organizations that receive funds from the commission "in payment for the provision of rehabilitation services." To ascertain the proper meaning of section 111.025, then, we must also learn the meaning of the term "rehabilitation services."
Section 111.002 of the Human Resources Code defines "rehabilitation services":
 (5) `Rehabilitation services' means any equipment, supplies, goods, or services necessary to enable a handicapped individual to engage in a gainful occupation or to achieve maximum personal independence. To enable a handicapped individual to engage in a gainful occupation or achieve maximum personal independence the commission may engage in or contract for activities, including but not limited to:
 (A) evaluation of rehabilitation potential, including diagnostic and related services incidental to the determination of eligibility for services and the nature and scope of services to be provided;
(B) counseling and guidance;
 (C) physical and mental restoration services necessary to correct or substantially modify a physical or mental condition that is stable or slowly progressive;
(D) training;
 (E) maintenance covering a handicapped individual's basic living expenses, including food, shelter, clothing, and other subsistence expenses necessary to support and derive the full benefit of the other rehabilitation services being provided;
(F) transportation;
(G) placement in a suitable employment;
 (H) postemployment services necessary to maintain suitable employment;
 (I) obtaining occupational licenses, including any license, permit, or other written authority required by a state, city, or other governmental unit to be obtained in order to enter an occupation or small business, and providing tools, equipment, initial stocks, goods, and supplies; and
 (J) providing other equipment, supplies, services, or goods that can reasonably be expected to benefit a handicapped individual in terms of employment in a gainful occupation or achievement of maximum personal independence. (Emphasis added.)
The definition of rehabilitation services is broad enough to encompass virtually all goods and services available to the commission to help a handicapped individual obtain gainful employment and improve his quality of life, including the services of state colleges and universities and the Guadalupe Economic Services Corporation. In contrast, the definition of "rehabilitation facility" contained in the Rehabilitation Act of 1973 places emphasis on facilities "operated for the primary purpose of providing vocational rehabilitation services to individuals with handicaps." 29 U.S.C. § 706(13). You do not suggest that the application of the federal definition is necessary to comply with any agreement with the federal government or is required as a condition for the acceptance of federal funds, and we detect no legislative intention to incorporate the federal definition into section 111.025. We must therefore conclude that the board's narrow reading of section 111.025 is contrary to the clear language of that section and section 111.002(5).
With this understanding of section 111.025, we can now directly address the first three issues concerning the authority of the commissioner to enforce that provision. The commissioner of the Texas Rehabilitation Commission serves as the chief administrative officer of the agency. Hum.Res. Code § 111.017. He administers chapter 111 of the Human Resources Code pursuant to policies adopted by the board of the commission. Id. He is given authority to make regulations necessary to carry out the purposes of chapter 111, subject to board approval. Id. § 111.018(a). He is also authorized to take whatever action is necessary or appropriate to accomplish the objectives of the chapter. Id. § 111.023. These provisions confer broad authority upon the commissioner to administer and enforce chapter 111. We believe they carry with them the implied authority to make the factual determinations necessary to enforce section 111.025 and to take action in the event a breach of section 111.025 is discovered. See Bullock v. Calvert, 480 S.W.2d 367 (Tex. 1972). However, these broad statements of authority do not grant the commissioner unlimited latitude in managing the affairs of the commission.
The language of section 111.025 curtails the discretion of the commissioner by providing a clear standard for establishing whether or to what extent a person is ineligible for employment by or membership on the board. Officers, employees, and paid consultants of organizations that receive funds from the commission "in payment for the provision of rehabilitation services" as defined by section 111.002(5) are ineligible for board membership or employment. Their spouses or cohabitants are ineligible for board membership or employment at or above salary grade 17. While we recognize that there may be harsh consequences, we must presume the legislature had a definite purpose in mind when it chose this broad standard of eligibility for membership on the board or employment by the board. Unless a statute is ambiguous, we are compelled to follow its clear language. RepublicBank Dallas, N.A. v. Interkal, Inc.,691 S.W.2d 605 (Tex. 1985). Neither this office nor the commissioner may ignore or alter the standard of eligibility simply because it yields unwanted results. See State v. Millsap, 605 S.W.2d 366
(Tex.Civ.App.-Beaumont 1980, no writ) (concluding that it is improper to add or to subtract from an unambiguous statute).
Accordingly, we conclude that the commissioner of the Texas Rehabilitation Commission has the authority to make the factual determinations necessary to enforce section 111.025 of the Human Resources Code, but such determinations must be made pursuant to the standards provided in that section. The commissioner may not enforce a standard at variance with section 111.025. The commissioner may take action necessary to remedy a violation of section 111.025.
Your fourth inquiry concerns the appropriate remedy for a violation of section 111.025. The Human Resources Code places primary responsibility for establishing operational policies in the board of the commission, see Hum.Res. Code § 111.017, and authorizes the commissioner to make regulations governing personnel standards with the approval of the board. Id. § 111.018(a). We think these provisions authorize the board and the commissioner to implement policies and rules necessary to enforce section 111.025. Once again, though, the board and the commissioner must be guided by the language of that section.
You observe that section 111.025 provides no remedy for a violation of the section. Other statutes with similar eligibility limitations provide that board members who violate the prohibitions are subject to removal and that employees who violate them are subject to dismissal. See, e.g., V.T.C.S. art. 8407a, § 29B(c); Attorney General Opinion JM-719 (1987). Section111.0131 of the Human Resources Code authorizes the removal of a board member who violates section 111.025, but no section requires the dismissal of an employee who violates section 111.025. Clearly, an officer, employee, or paid consultant of an organization supplying rehabilitation services to the commission in exchange for commission funds is not eligible for employment by the board at any salary grade. Their spouses or cohabitants who are employed by the board need not necessarily be dismissed. However, the relationships between board employees and persons associated with organizations that supply rehabilitation services to the commission may, in certain circumstances, affect the independence of judgment of the employee and subject the employee to discipline under article 6252-9b. Whether a board employee who is the spouse or cohabitant of an officer, employee, or paid consultant of such an organization is subject to discipline under article 6252-9b is a question of fact that must first be determined at the agency level.
 SUMMARY
The commissioner of the Texas Rehabilitation Commission may make the factual determinations necessary to enforce section 111.025
of the Human Resources Code, but such determinations must be made pursuant to the standards provided in that section. The commissioner may not enforce a standard at variance with section 111.025. The commissioner may take action necessary to remedy a violation of section 111.025.
A board member who violates section 111.025 is subject to removal. Hum.Res. Code § 111.0131(a)(3). Officers, employees, or paid consultants of an organization that receives funds from the commission for the provision of rehabilitation services as defined in section 111.002(5) of the Human Resources Code are ineligible for appointment to or employment by the board of the Rehabilitation Commission. Spouses and cohabitants of such persons may not be members of the board or employees of the board at or above salary grade 17, according to the position classification schedule under the General Appropriations Act.
Very truly yours,
 Jim Mattox Attorney General of Texas
 Mary Keller First Assistant Attorney General
 Lous McCreary Executive Assistant Attorney General
 Judge Zollie Steakly Special Assistant Attorney General
 Rick Gilpin Chairman Opinion Committee
 Prepared by Steve Aragon
Assistant Attorney General
[1] You do not explain how a rehabilitation facility is "created" or "continued" by the commission. Your office has informed us that these words simply refer to facilities or programs that receive funds from the commission for rehabilitation services, either by grant or through contract — in other words, facilities established for the primary purpose of providing rehabilitation services.